IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-412

Filed 4 June 2024

Forsyth County, Nos. 20CRS52155, 20CRS52156, 20CRS52158

STATE OF NORTH CAROLINA

v.

DALUIS ALEJAND JAVIER GUZMAN, Defendant.

Appeal by defendant from judgments entered 28 April 2022 by Judge David L. Hall in Forsyth County Superior Court. Heard in the Court of Appeals 24 January 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Jocelyn C. Wright, for the State-appellee.*

*Patterson Harkavy LLP, by Christopher A. Brook, for defendant-appellant.*

GORE, Judge.

Defendant, Daluis Alejand Javier Guzman, appeals the denial of his request for the trial judge's recusal. The trial judge entered multiple orders prior to trial authorizing, (1) the use of a pen register and trap and trace device, (2) the release of precise location data, (3) the release of subscriber account information, call detail records and cell site location data, and (4) the use of a Global Positioning System ("GPS") tracking device. Defendant argued prior to the start of trial that these orders

required recusal of the trial judge who entered them, pursuant to section 15A-291(c). Upon review of the record and the briefs, we affirm the trial court's denial of the recusal request.

## I.

Law enforcement obtained multiple orders, pursuant to Article 16, N.C.G.S. § 15A-291(a), between September 2019 and February 2020 to intercept cell phone conversations between defendant and co-conspirators. These types of orders could only be entered by a judicial review panel, when the request was for the interception of wire, oral, or electronic communications. N.C.G.S. § 15A-291(a) (2022). One of the judges on the panel, Judge Hardin, later recused himself during the pre-trial hearing because of his participation in the judicial review panel.

As the investigation continued, law enforcement sought three more orders, which are the subject of this appeal. The first order, entered 6 December 2019 by Judge Hall, gave authorization to use a GPS tracking device on defendant's Honda Accord ("GPS Order"). The next two orders, entered 10 January 2020 and 31 January 2020 by Judge Hall (the "January Orders"), provided authorization to install a pen register and trap and trace device, precision location data (GPS), the release of subscriber account information, call detail records, and cell site location information ("CSLI"), both historical and prospective, for two "target telephones." Within the GPS and January Orders, Judge Hall determined there was probable cause for the

authorization sought. The January Orders cited sections 15A-262 and 15A-263 within Article 12, as statutory authorization.

In February 2021, defendant was indicted with trafficking in cocaine by possession, possession with intent to sell and deliver cocaine, conspiring to traffic cocaine, and multiple counts of maintaining a vehicle and a place that was used for keeping and selling cocaine. At the pre-trial hearing on 11 April 2022, Judge Hardin recused himself once counsel raised the limitation found in section 15A-291(c), requiring the recusal of judges who participated in a judicial review panel to authorize electronic surveillance orders. Judge Hall presided over the pre-trial hearings on 20 April 2022 as a replacement to Judge Hardin. Defendant, acting pro se, raised the issue of recusal pursuant to section 15A-291(c) with Judge Hall due to the GPS and January Orders that Judge Hall entered.

Judge Hall reviewed the challenge for recusal by reading section 15A-291(c), reviewing the GPS and January Orders and consulting Judicial Standards. Upon review, Judge Hall explained the orders were authorized pursuant to sections 15A-262 and 15A-263 of Article 12, not pursuant to section 15A-291 of Article 16, and that he was not part of a judicial review panel as stated in the plain language of section 15A-291(c). Accordingly, Judge Hall refused to recuse himself because he determined he could preside fairly and without partiality. At the conclusion of the trial, on 28 April 2022, defendant was convicted of all charges and received three consecutive sentences. Defendant entered an oral notice of appeal.

## II.

Defendant appeals of right pursuant to N.C.G.S. §§ 7A-27(b) and 15A-1444(a). Defendant argues Judge Hall erroneously refused to recuse himself prior to trial and that this error was structural. Defendant argues this is a statutory mandate under section 15A-291(c) because the January Orders signed by Judge Hall should belong within the scope of Article 16, rather than the stated scope of Article 12. We start by acknowledging defendant did not challenge the validity of the GPS and January Orders signed by Judge Hall, and therefore, the only argument preserved for our review is whether Judge Hall was required to recuse himself pursuant to section 15A-291(c). We review the application "of a question of law" de novo. *State v. Rutledge*, 267 N.C. App. 91, 95 (2019).

Defendant leads us down a circuitous route to demonstrate why Judge Hall should have recused himself under the statutory mandate of section 15A-291(c). Section 15A-291(c) states, "No judge who sits as a member of a judicial review panel shall preside at any trial or proceeding resulting from or in any manner related to information gained pursuant to a lawful electronic surveillance order issued by that panel." N.C.G.S. § 15A-291(c) (2022). According to defendant, the judge entered "a lawful electronic surveillance order" and therefore he should have recused himself. Defendant attempts a "substance over form" argument by arguing the substance of the January Orders should have qualified within the scope of Article 16. *See* N.C.G.S. § 15A-291 (2022). But this argument was not made at the trial level, and as

previously stated, defendant made no suggestion at the trial level that the GPS and

January Orders were improperly authorized.

Defendant made the following arguments at the trial level to support a recusal:

[DEFENDANT]: Do you remember what Mr. Broyhill introduced on Monday, the first time we came here from General Statute 15A-291, application for electronic surveillance order. I just found that you signed three orders in this case. That was on December 6th, 2019, the GPS on the Honda Accord. And I've got the order right here. The order for this telephone that is signed by you. So you can't be the judge to preside over this case either. Because that's why we came here Monday, and Mr. Broyhill got Honorable Judge Hardin off the case.
. . .

[DEFENDANT]: There is another one I didn't bring today. You signed a GPS order for the Honda Accord 2014 on December 6th, 2019.
. . .

THE COURT: For the record, so everyone understands, the first order I have here is an order that we refer to as an order allowing a trap and trace device, it was signed by me January 10th of 2020. The statute that permits such an order is 15A-263. I'm going to look and see if it addresses whether that judge may then preside. I've never addressed this issue before.
. . .

MR. JORDAN [standby counsel]: Not to argue the point, but for clarification for Mr. Guzman.

THE COURT: Yes, sir.

MR. JORDAN [standby counsel]: I think he's referring to statute 15A-291, and specifically the heading of electronic surveillance, and then from there. So I don't think he's arguing the phone numbers. I think he's arguing any electronic surveillance, which I think would include the tracking device. That's my understanding.
. . .

THE COURT: All right, let's come back to order, please. I just spent time talking with Judicial Standards. There is no prohibition. The case will move forward. Now, put on the record the only thing I would need to be concerned about under Canon 3 is whether anything I read or heard -- which, frankly, I don't remember other than I remember -- I remember the gentleman's wife, Dorka, because I had never heard that name before, and I remembered that this morning -- whether it would impair my ability to be fair and impartial in any way, and it will not, so we will move forward.

On appeal, defendant argues beyond what was challenged at the trial level. A review of the transcript demonstrates the only issue Judge Hall passed upon was whether section 15A-291(c) would disqualify him based upon the GPS and January Orders he authorized. Defendant argued that because of the header "electronic surveillance" for section 15A-291, that any form of electronic surveillance would require Judge Hall to recuse himself. There was no argument that the GPS and January Orders went beyond the scope of their authorization and there was no argument that those Orders should have been authorized under Article 16.

Although defendant sought to compare Judge Hall with Judge Hardin, who recused himself, Judge Hall clarified that Judge Hardin recused himself because of his participation in a judicial review panel that issued multiple Article 16 Orders, commonly called "wiretap orders." Whereas the GPS and January Orders entered by Judge Hall were authorized under a different statute, Article 12, and are commonly called "ping orders." Judge Hall looked to see if Article 12 or any further statutes addressed any requirements for judicial recusal, because the GPS and January Orders were not entered under Article 16, and he did not sit on a judicial review

panel.

Judge Hall only considered whether section 15A-291(c) would disqualify him having entered orders under different statutory provisions. The GPS and January Orders were not authorized pursuant to Article 16 or a judicial review panel. The plain language of section 15A-291(c) only disqualifies judges who enter orders as part of a judicial review panel that authorize "any manner related to information gained pursuant to a lawful electronic surveillance order." Therefore, given the limited review and missing challenge to the validity of the GPS and January Orders, Judge Hall correctly determined section 15A-291(c) did not require his recusal.

Defendant cites multiple cases involving denials of motions to suppress evidence gained by historical CSLI. *See Carpenter v. United States*, 138 S. Ct. 2206, 2217, 2221 (2018); *State v. Gore*, 272 N.C. App. 98, 100-101 (2020); *State v. Rogers*, No. COA21-707, 2022 WL 17420248, at *5, *7 (N.C. Ct. App. 2022) (unpublished). However, after reviewing these cases, we determine they do not assist us in the present case. We are addressing whether a trial judge must recuse himself pursuant to section 15A-291(c), not whether the GPS and January Orders went beyond the scope of their authorization under Article 12 or should have been authorized under Article 16. Additionally, we decline defendant's invitation to investigate the substance of the GPS and January Orders and consider various statutory definitions to place the Orders within the statutory constraints of Article 16. *See State v. Piland*, 263 N.C. App. 323, 333 (2018) (discussing how the law does not allow this Court to

consider new legal theories by defendant that were not first passed upon at the lower court).

Finally, defendant does not argue an alternative abuse of discretion argument for judicial recusal. Accordingly, we affirm Judge Hall's refusal to recuse himself from defendant's trial. Because of our decision to affirm the trial court's ruling, we do not consider defendant's additional arguments of structural error.

## III.

For the foregoing reasons we affirm the trial judge's denial of the recusal request.

AFFIRMED.

Judge HAMPSON concurs by separate opinion.

Judge ARROWOOD dissents by separate opinion.

No. COA23-412 –*State v. Guzman*

HAMPSON, Judge, concurring.

I agree that Defendant, in this case, has failed to demonstrate that the January Orders signed by Judge Hall constitute orders permitting electronic surveillance as contemplated in Article 16 of Chapter 15A of the North Carolina General Statutes. Thus, I also agree Judge Hall did not have a statutory mandate to recuse from this case pursuant to N.C. Gen. Stat. § 15A-291(c). Therefore, there was no reversible error.

However, I am also unconvinced that the January Orders signed by Judge Hall simply fall under the provisions of Article 12 of Chapter 15A—as presently codified[1]— for pen registers and trap and trace devices. This is so because Judge Hall's January Orders expressly permitted collection of both historical and prospective, or real-time, location tracking through CSLI. As presently codified Section 15A-263 contains no express provision allowing for location tracking or the collection of CSLI. *See* N.C. Gen. Stat. § 15A-263 (2023). Location tracking using CSLI—and specifically prospective or real-time CSLI—appears to fall somewhere in between Article 16 electronic surveillance and Article 12 pen registers and trap and trace devices.

---

[1] Potential changes to Article 12 were introduced in the General Assembly in House Bill 719 during the 2023 Session. Included in the proposed amendments were provisions permitting the issuance of orders for pen register or trap and trace devices and including location tracking upon a showing of probable cause. HB719, 2023 Gen. Assemb., 2023-2024 Sess. (N.C. 2023).

Article 16 focuses on electronic surveillance of the contents of communications: the most commonly recognized example likely being wiretaps. " 'Electronic surveillance' means the interception of wire, oral, or electronic communications as provided by this Article." N.C. Gen. Stat. § 15A-286(11) (2023). " 'Intercept' means the aural or other acquisition of the contents of any wire, oral, or electronic communication through the use of any electronic, mechanical, or other device." N.C. Gen. Stat. § 15A-286(13). " 'Contents' when used with respect to any wire, oral, or electronic communication means and includes any information concerning the substance, purport, or meaning of that communication." N.C. Gen. Stat. Ann. § 15A-286(6). Issuance of an order for electronic surveillance must be supported by probable cause. N.C. Gen. Stat. Ann. § 15A-293(a) (2023).

Article 12 focuses on the collection of the numbers dialed or transmitted by a telephone and the originating number of a device from which wire or electronic communications are transmitted. *See* N.C. Gen. Stat. Ann. § 15A-260 (2023). Under Article 12:

> "Pen register" means a device which records or decodes electronic or other impulses which identify numbers dialed or otherwise transmitted on the telephone line to which such device is attached, but the term does not include any device used by a provider or customer of a wire or electronic service for billing, or recording as an incident to billing, for communication services provided by the provider or any device used by a provider or customer of a wire communication service for cost accounting or other like purposes in the ordinary course of its business, nor shall the term include any device which allows the listening or

> recording of communications transmitted on the telephone
> line to which the device is attached.

N.C. Gen. Stat. § 15A-260(2). " 'Trap and trace device' means a device which captures the incoming electronic or other impulses which identify the originating number of an instrument or device from which a wire or electronic communication was transmitted." N.C. Gen. Stat. § 15A-260(3). The issuance of an order for pen register or trap and trace device must be supported by reasonable suspicion. N.C. Gen. Stat. § 15A-263(a)(1).

In this case, the authorization for the collection of CSLI—including prospective or real time location tracking—was beyond the scope of Article 12 as currently codified. Indeed, the applicant(s) for the orders and Judge Hall in issuing the January Orders astutely recognized these were beyond the scope of pure Article 12 orders. This is illustrated by Judge Hall's application of the probable cause standard rather than reasonable suspicion to support issuance of the January Orders. However, nothing in the January Orders permits the interception of the content of any communication.

Thus, while the January Orders may have exceeded the scope of the existing Article 12 provisions authorizing orders for pen register and trap and trace devices by including provisions for collection of CSLI, including specifically prospective or real-time CSLI, the January Orders were not orders for electronic surveillance intercepting the content of any communication governed by Article 16. Therefore,

Judge Hall was not required to recuse by the statutory mandate of N.C. Gen. Stat. §

15A-291(c). Consequently, Judge Hall did not err by determining he was not required

to recuse pursuant to that statute.[2] Accordingly, there was no error at trial.

---

[2] Not raised in this appeal—because it was not raised below—is, however, the issue of whether and to what extent a trial judge may have some separate duty to recuse from trial after that judge had considered investigatory evidence and made a determination of probable cause sufficient to justify issuance of an order permitting collection of CSLI—and, again, in particular prospective or real-time CSLI—for a suspect. Moreover, in this case, the applications for the January Orders included contents of communications intercepted pursuant to the earlier Article 16 Orders—raising the additional question of, if a member of the three-judge Article 16 panel is required to recuse from subsequent proceedings in a case, would a judge who reviewed the content of those intercepted communications and made a probable cause determination based on the content of those communications have any duty to recuse.
.

No. COA23-412 – *State v. Guzman*

ARROWOOD, Judge, dissenting.

The majority states that "given the limited review and missing challenge to the validity of the GPS and January Orders, Judge Hall correctly determined [N.C.G.S. §] 15A-291(c) did not require his recusal." Because I believe the pro se defendant sufficiently preserved the argument during pretrial proceedings and § 15A-291(c) was implicated by the 10 and 31 January orders, I respectfully dissent.

The majority contends that—unlike on appeal—defendant failed to argue at the trial level that Judge Hall should have recused himself because he had previously entered a lawful electronic surveillance order. But—as expressly quoted in the majority's opinion—defendant not only cited the specific statutory authority on which the argument was based, he also articulated the argument that flowed from that authority during pretrial proceedings.[3] I believe this sufficiently preserved the argument for a pro se defendant. I also agree with defendant that "[t]rial court compliance with statutory mandates is automatically preserved for appellate review"

---

[3] During pretrial proceedings on 20 April 2022, defendant stated, "Do you remember what Mr. Broyhill introduced on Monday, the first time we came here *from General Statute 15A-291, application for electronic surveillance order*. I just found that you signed three orders in this case. That was on December 6th, 2019, the GPS on the Honda Accord. And I've got the order right here. *The order for this telephone that is signed by you. So you can't be the judge to preside over this case either.* Because that's why we came here Monday, and Mr. Broyhill got Honorable Judge Hardin off the case." (emphasis added). Moments after this statement, defendant clarified that "[t]he order for this telephone" was Judge Hall's 10 January 2020 order.

and that North Carolina General Statute § 15A-291(c) imposes such a mandate.[4] *See State v. Aikens*, 342 N.C. 567, 578 (1996) (explaining that a "trial court's failure to comply with a mandatory statute relieves defendants of their obligation to object in order to preserve the error for review." (cleaned up)). Nonetheless, despite defendant's preservation, the majority's use of "waiver" in this case inhibits this Court from providing clarity to the lower courts and increasing the probability of compliance with our statutes.

North Carolina General Statute § 15A-291 governs the application and issuance of electronic surveillance orders. N.C.G.S. § 15A-291 (2023). Specifically, the statute provides that the Attorney General or their designee may apply for "an order authorizing or approving the interception of wire, oral, or electronic communications by investigative or law enforcement officers . . . ." § 15A-291(a). The statute also mandates that any judge who sits on a review panel authorizing such an order must recuse themselves from presiding over a trial involving information gained from the order. § 15A-291(c). Conversely, N.C.G.S. §§ 15A-262–63 governs the application and issuance of orders for pen register or trap and trace devices and does not mandate judicial recusal.[5]

Here, the 10 and 31 January orders signed by Judge Hall approved law

---

[4] The majority opinion does not address this argument for preservation.

[5] Another relevant distinction between § 15A-291 and §§ 15A-262–63 is that the former requires a finding probable cause for order issuance, whereas the latter only requires a finding of reasonable suspicion.

enforcement's request for, *inter alia*, "incoming and outgoing call details, without geographical limits," including "location of cell site/sector (physical address) at call origination (for outbound calling) and call termination (for incoming calls) and, if reasonably available, during the progress of a call, for the Target Telephone."[6] These orders thus expressly authorized law enforcement's acquisition of defendant's cell-site location information ("CSLI").

According to Judge Hall, the 10 and 31 January orders were authorized under §§ 15A-262–63. But the orders' approval for CSLI goes well beyond an application for a pen register or a trap and trace device. Whereas pen registers and trap and trace devices merely identify the phone numbers dialed on outgoing and incoming calls, *see* N.C.G.S. § 15A-260(2)–(3), CSLI is a "qualitatively different category" of information that provides law enforcement with "a comprehensive dossier of [one's] physical movements" over an extended period of time. *Carpenter v. United States*, 585 U.S. 296, 309, 315 (2018).[7] Unlike dialed phone numbers, the quality of CSLI data "gives police access to a category of information otherwise unknowable." *Id.* at 312. Thus, Judge Hall's January orders fall into a "qualitatively different category"

---

[6] The orders further approved law enforcement's request for "historical and prospective Global Positioning Location (GPS) information without geographical limits" and "other precision/specific location information on the Target Telephone during the same period."

[7] As explained by the United States Supreme Court, CSLI's "time-stamped data provides an intimate window into a person's life, revealing not only his particular movements, but through them his familial, political, professional, religious, and sexual associations." *Carpenter,* 585 U.S. at 311 (cleaned up).

than orders authorized under N.C.G.S. §§ 15A-262–63. *See id.* at 309. Although the 10 and 31 January orders purport to be governed by the provisions of N.C.G.S. §§ 15A-262–63, a review of the substance of the information sought and ordered—rather than the form—leads me to conclude that the orders are more closely akin to the information covered by N.C.G.S. § 15A-291, which mandates recusal. In fact, it is telling that the trial court applied the probable cause standard required by N.C.G.S. § 15A-291 when issuing the orders rather than the reasonable suspicion standard pursuant to N.C.G.S. §§ 15A-262–63. This further bolsters my view that these were N.C.G.S. § 15A-291-type orders.[8]

I also disagree with the concurrence that the 10 and 31 January orders were not governed by N.C.G.S. § 15A-291 because they did not authorize surveillance "intercepting the content of any communication . . . ." " 'Contents' when used with respect to any wire, oral, or electronic communication means and includes any information concerning the substance, purport, or *meaning of that communication*." N.C.G.S. § 15A-286(6) (emphasis added). Although CSLI may not concern the substance of a communication, it does concern detailed information about the communication—such as precisely when and where the communication occurred. And because such information can provide insights into or allow law enforcement to

---

[8] Further, as the concurrence notes, §§ 15A-262–3 contain no provision allowing the collection of CSLI.

draw inferences "concerning . . . the meaning of that communication[,]"[9] I believe

N.C.G.S § 15A-291 governs orders for CSLI.  Accordingly, it is my opinion that Judge

Hall erred by not recusing himself as required by that statute.

---

[9] For example, communications with little time in between calls from a person in a particular location at a specific time may provide meaningful context for the person's communications, such as indicating a sense of urgency associated with the communication.